

FILED

2015 Sep-23  AM 09:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **BLACK DIAMOND LAND** ) | |
| **MANAGEMENT, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) **Case No.: 2:14-CV-02333-RDP** | |
| **TWIN PINES COAL COMPANY, INC.,** ) | |
| **DRUMMOND COMPANY, INC.,** ) | |
| **MOLPUS TIMBERLANDS** ) | |
| **MANAGEMENT, LLC,** ) | |
| **SWF BIRMINGHAM, LLC and** ) | |
| **VALLEY CREEK LAND AND TIMBER,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to the Court's August 6, 2015, Order (Doc. No. 45), Plaintiff Black

Diamond Land Management, LLC, amends its December 4, 2014, complaint in this

case (as amended on February 8, 2015).  This **SECOND AMENDED**

**COMPLAINT** states as follows:

## INTRODUCTION

Through unauthorized commercial coal mining and timber cutting activities,

the Defendants wrongfully extracted natural resources (timber/coal) owned by

Plaintiff without permission or financial compensation. See <u>Fed. R. Civ. P.</u> 11 (b)

(3). Then, the Defendants began misstating and/or misrepresenting the facts regarding the origin of these misappropriated natural resources by labeling Plaintiff's resources with Defendants' own logo/symbols. After that, Defendants began selling and exporting Plaintiff's natural resources under the continued false pretense that commercial title to Plaintiff's natural resources actually belonged to the Defendants. Making matters even worse, Defendants repeatedly refused to share with the Plaintiff any profits that the Defendants gained from the sale of Plaintiff's natural resources.

Within the context of Alabama's criminal code, the conduct of the Defendants, as described in this amended complaint, would be criminal in nature (i.e., theft of property, theft of property by deception, and misappropriation of property, etc.). This conduct also forms the basis for civil liability, as more fully described in this Second Amended Complaint.  Furthermore, the Defendants could not have honestly and reasonably believed, at all relevant time to this Complaint, that they had valid claims to the mineral, timber and coal resources that were taken from Plaintiff.

Throughout this litigation, Defendants have argued that Plaintiff's land dispute has been adjudicated in state court and thus, according to Defendants, Plaintiff's claims are barred.  Defendants are wrong. First, Plaintiff's claim of ownership rights over minerals/natural resources is an issue that is separate and

distinct from the issue of land ownership because mineral rights can be owned without owning surface land. In fact, Defendant Drummond has shown a willingness in the past to purchase rights to Plaintiff's natural resources.

## **JURISIDICTION**

1.

This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1367 and 1338 because Plaintiff's Complaint raises federal questions arising under, inter alia: (1) 18 U.S.C. § Pt. I, Ch. 96, Racketeered Influence and Corrupt Organizations (e.g., Travel Act, 18 U.S.C.A. § 1952, 18 U.S.C. § 1957); (2) the Sherman Anti-Trust Act 18 U.S.C. § 1952; (3) the Lanham Act, 15 U.S.C. § 1125, arising out of interstate commerce; (4) the Federal Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202; and (5) the Interstate Commerce Act. Plaintiff also asserts pendent state law claims pursuant to U.S.C. § 1367.

2.

Venue is proper because under 28 U.S.C. § 1391.  Without authority, the Defendants have taken and sold natural resources in the form of commercial products and/or services that are the subject of this action in this District. See Fed. R. Civ. P. 11 (b) (3).

## THE PARTIES

### 3.

Plaintiff Black Diamond Management, LLC ("Black Diamond"), is an Alabama corporation with its principal place of business at 4029 – 44th Ave., N., Birmingham, AL 35217. They are successors in interests of Southern Iron & Steel chartered under Legislature December 12, 1898, estate tax payers.

### 4.

Defendant Twin Pines Coal Company, Inc., is an Alabama corporation with its principal place of business at 74 Industrial Parkway, Jasper, AL, 35501. This defendant is the purported "owner" of certain mineral leasing rights that are, in fact, owned by Plaintiff.

### 5.

Defendant Drummond Company, Inc., is an Alabama corporation with its principal place of business at 101 Walston Bridge Road, Jasper, AL 35501.  In January 2011, Drummond formed Twin Pines, LLC, as a wholly owned subsidiary to acquire the assets of Twin Pines Coal Company, Inc.

### 6.

Defendant Molpus Timberlands Management, LLC, is an Alabama corporation with its principal place of business at 502 Valley View Drive, P.O. Box 59, Philadelphia, MS 39350.

7.

Defendant SWF Birmingham, LLC ("SWF"), is a limited liability company registered to do business is Alabama, with its principal place of business at 654 N. State Street, JACKSON, MS 39202.

8.

Defendant Valley Creek Land and Timber, LLC ("Valley Creek"), is a limited liability company registered to do business in Alabama, with its principal place of business at 1300 Meadowbrook Road, Suite 202, Jackson, MS 39211.

## THE FACTS

9.

United State Steel filed a lawsuit against Plaintiff in state court and a final order was issued that establishes boundary lines that play a significant role in this litigation.

**A.    Facts Related to Defendant Twin Pines**

10.

On August 2, 2010, a pre-blast survey of Plaintiff's premises was authorized by Twin Pines Coal, Inc.

11.

On August 25, 2010, a letter of ownership by Plaintiff was sent to Twin Pines Coal, Inc., addressing the cutting of Plaintiff's timber and the mining of

Plaintiff's coal.

## 12.

A second letter from Plaintiff was sent October 7, 2010, to Twin Pines Coal, Inc., claiming Plaintiff's ownership of natural resources being commercially exploited by Twin Pines.

## 13.

Defendant Twin Pines took Plaintiff's natural resources without any oral or written authority from Plaintiff to do so, and without compensation.

## 14.

Without authority from Plaintiff, Defendant Twin Pines sold Plaintiff's natural resources (i.e., commercial grade coal) that it wrongfully took from Plaintiff.  The sale of said natural resources exceeded $10,000.  See Fed. R. Civ. P. 11 (b) (3).

## 15.

Twin Pines misrepresented the origination of Plaintiff's coal and coal reserves by selling and marketing Plaintiff's coal as its own.

**B**.    **Facts related to Molpus Timberland, SWF, and Valley Creek**

## 16.

Without authority from Plaintiff, and on multiple occasions, Molpus Timberland conducted commercial timber operations that resulted in Molpus

taking Plaintiff's timber without authority to do so from Plaintiff.

17.

Without authority from Plaintiff, Defendant Molpus Timberland has sold Plaintiff's natural resources (i.e., commercial grade timber) that it took without authority from Plaintiff, and the sale of said resources has exceeded $10,000.  See Fed. R. Civ. P. 11 (b) (3).

18.

Without authority from Plaintiff, Defendants SWF and Valley Creek have sold Plaintiff's natural resources (i.e., commercial grade timber) that they misappropriated without authority from Plaintiff, and the sale of said resources has exceeded $10,000.  See Fed. R. Civ. P. 11 (b) (3).

19.

Defendants SWF and Valley Creek knowingly authorized the unlawful taking of Plaintiff's natural resources (e.g., timber) because Defendants SWF and Valley Creek knew and had reason to know that Plaintiff had ownership title to the timber that they took and sold. Defendants SWF and Valley Creek knowingly authorized the unlawful taking and selling of Plaintiff's natural resources (e.g., timber).

20.

SWF, Valley Creek and Molpus made false statement about the origination of Plaintiff's timber and timber reserves, evidence by the selling and marketing of Plaintiff's timber as their own.

**C**.    **Facts related to Defendant Drummond**

21.

Drummond Coal has colluded with Twin Coal Pines, Inc., so much, with respect to teaming up against Plaintiff (e.g., misappropriating Plaintiff's natural resources/mineral rights) that Drummond Coal's attorney tried to represent Twin Pines, a separate corporation, in this litigation, unlawfully. (See ECF 10.) Eventually, Drummond and Twin Pines abided by the law by ensuring that Twin Pines was represented by its "own" attorney. (See ECF 15.) There is no doubt that these two Defendants have formed an enterprise, pursuant to 18 U.S.C. § 1961, to achieve various unlawful ends against Plaintiff.

22.

On December 19, 2011, a notice was sent to by Defendant Drummond Company to Plaintiff concerning "Blasting" with respect to Plaintiff's natural resources such as coal.

23.

Drummond Company sent another "Blasting Notice" to Plaintiff on December 26, 2012 concerning further mining operations with respect to Plaintiff's natural resources such as coal.

24.

Defendant Drummond held a meeting on June 11, 2012 in its office with Plaintiff concerning Drummond's interest acquiring ownership of Plaintiff's natural resources. It was pointed out by Drummond that mining had already taken place with respect to natural resources that Plaintiff claims ownership over.

25.

On July 18, 2012, Plaintiff sent a follow-up letter to Drummond concerning another meeting and the possible purchase.

26.

On March 21, 2013, Plaintiff's former attorney sent Drummond Company a letter, providing a contract for the ultimate purchase of Plaintiff's natural resources.

27.

Meanwhile, Defendant Drummond continued to conduct mining operations with respect to Plaintiff's natural resources such as coal.  These commercial mining operations included the extraction of Plaintiff's coal.

28.

Defendant Drummond has sold Plaintiff's coal and other natural resources that the company wrongfully took without Plaintiff's authorization, and the sale of said coal and other natural resources has exceeded $10,000.

29.

Drummond Coal misrepresented the origination of Plaintiff's coal and coal reserves by selling and marketing Plaintiff's coal as its own.

**D**.     **Facts relevant to all claims**

30.

At least some, if not all, of Plaintiff's natural resources wrongfully taken by the Defendants, acting in concert with each other, has travelled across state lines by way of railcars that travel on interstate railroads.

31.

Defendants Drummond and Twin Pines sell and export coal all over the world. Defendants Molpus, SWF, and Valley Creek sell and export timber outside of Alabama. See Fed. R. Civ. P. 11 (b) (3).

32.

At least some, if not all, of Plaintiff's natural resources taken by the Defendants, acting in concert with each other, has travelled across state lines by motor vehicle transportation.

33.

At least some, if not all, of Plaintiff's natural resources taken by the Defendants, acting in concert with each other, has travelled to states beyond Alabama by river transportation.

34.

All Defendants knew that they were wrongfully taking Plaintiff's natural resources at the time said natural resources were extracted/harvested and at the time said natural resources were thereafter marketed/sold in the stream of interstate commerce. See Fed. R. Civ. P. 11 (b) (3)

35.

Defendants Drummond and Twin Pines knew at the time of submitting permit applications for mining operations that the law required the disclosure of Plaintiff's natural resources (coal rights) on said permit applications.  Nevertheless, Defendants knowingly failed to disclose Plaintiff's ownership interest in the natural resources (coal) listed on said permit applications.

36.

Defendants Molpus, SWF, and Valley Creek knew at the time of submitting permit applications for timber cutting operations that the law required the disclosure of Plaintiff's timber rights on said permit applications. Nevertheless, Defendants knowingly failed to disclose Plaintiff's ownership interests in

Plaintiff's timber on said permit applications.

37.

Irrespective of title to the surface land, Plaintiff possesses the ownership rights to mineral, coal, timber, and other natural resources wrongfully taken by Defendants.  Defendants' systematic taking of said minerals, coal, timber, and other natural resources has caused Plaintiff to suffer damages in an amount exceeding tens of millions of dollars.

38.

Each Defendant is an enterprise as defined by 18 U.S.C. § 1961.

39.

On multiple occasions, the Defendants used electronic means to wire money in relation to invoices and payments/proceeds for natural resources wrongfully taken from Plaintiff.

40.

On multiple occasions, Defendants used electronic means and U.S. Mail to communicate about the sale of the natural resources wrongfully taken from Plaintiff.

41.

On multiple occasions, Defendants used U.S. Postal Service in relation to invoices and payments/proceeds for natural resources wrongfully taken from Plaintiff.

42.

On multiple occasions, Defendants deposited financial proceeds derived from the sale of Plaintiff's natural resources into a bank account regulated by the Federal Depository Insurance Corporation and federal bank chartering and regulatory agencies.

43.

Each Defendant communicated with the other about their respective--and *joint role*—in misappropriating Plaintiff's natural resources such as minerals, coal and timber that each Defendant knew were owned by Plaintiff. In essence, the Defendants acted in concert with each other in wrongfully taking Plaintiff's natural resources without compensation.

44.

Each Defendant engaged with the other for the purpose of jointly profiting from the sale of Plaintiff's resources.

**E.**     **Facts related to Defendants' effect on intra-state and interstate commerce**

As a matter of fact, the U.S. Supreme Court has "upheld a wide variety of Congressional Acts regulating intrastate economic activity where we have *concluded that the activity substantially affected interstate commerce*. Examples include the regulation of *intrastate coal mining*." United States v. Lopez, 514 U.S. 549, 559, 115 S. Ct. 1624, 1630, 131 L. Ed. 2d 626 (1995).

45.

Plaintiff is a corporation that desires to enter the Alabama and world markets in which coal and timber are resourced in Alabama and then marketed and sold for profit within and beyond Alabama.

46.

Defendants' conduct has operated to exclude Plaintiff from the coal and timber market business within and beyond Alabama.

47.

Defendants Drummond and Twin Pines largest intrastate competitor (Walter Energy, Inc.) in the coal mining industry recently filed for bankruptcy.

48.

The Defendants conspired as an enterprise to achieve the singular unlawful end of misappropriating and profiting from Plaintiff's resources, as evidenced in part by the fact that Defendants Molpus, SWF, and Valley Creek ensured that

Plaintiff's timber was clear cut (resourced) so that Drummond and Twin Pine could then extract Plaintiff's coal from said clear-cut land.

49.

The Defendants in this case are an enterprise as defined under all applicable statutes, including 18 U.S.C. § 1961

**COUNT I**

**<u>VIOLATION OF FEDERAL RACKETERRING INFLUENCED AND CORRUPTION ACT BY VIOLATING 18 U.S.C.A. § § 1957; 1952; 2314; and 2314, INTER ALIA</u>**
(Against all Defendants)

A party is guilty of violating 18 U.S.C.A. § 1957 when that person "[k]nowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

50.

Plaintiff hereby re-alleges and incorporates paragraphs 9-49, as if said paragraphs were stated verbatim herein, as support for the allegations made within this Count.

51.

Based on the allegations incorporated to support this Count, on multiple occasions, within the last five years, Defendants, as an "enterprise," have knowingly engaged in a pattern of racketeering, as evidenced by Defendants

15

knowingly engaging and attempting to engage in monetary transactions in criminally derived property—e.g., wrongfully taking Plaintiff's minerals, coal and timber and other natural resources—of a value greater than $10,000. Defendants, on multiple occasions closely tied in time, knowingly transported Plaintiff's natural resources (e.g., coal, timber, minerals) that they wrongfully took from Plaintiff to different states and countries outside of Alabama by use of truck, river transportation and railroad transportation. Defendants then, on multiple occasions closely tied in time, used the U.S. Postal system and electronic wire system to transfer and deposit proceeds gained from selling natural resources Defendants wrongfully took from Plaintiff.

52.

A party is guilty of violating 18 U.S.C.A. § 1952 if that party "uses the mail or any facility in interstate or foreign commerce, with intent to—

**(1)** distribute the proceeds of any unlawful activity; or

**(2)** commit any crime of violence to further any unlawful activity; or

**(3)** otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity.

53.

In addition to the facts expressly incorporated to support this Count, Plaintiff states that Defendants violated the Federal Racketeering Influenced and Corruption

Act by--on multiple occasions closely tied in time—managing and facilitating the known unlawful activity of using trucks, river transportation, and railroads, to transport Plaintiff's natural resources Defendants wrongfully misappropriated from Plaintiff, to various states and countries outside of Alabama. After Defendants used river systems, trucks, and railroads to transfer Plaintiff's stolen natural resources to various states and countries outside of Alabama, Defendants used the mail system (both wire and U.S. Postal) to finalize transactions so that the monetary proceeds derived from the wrongfully taken natural resources were deposited into Defendants' bank accounts or sent to Defendants' business, or otherwise delivered into Defendants' possession. CF. Hill v. Morehouse Med. Associates, Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (reasoning, "Rule 9(b)'s heightened pleading standard may be applied less stringently, however, when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control.")

54.

Based on the facts incorporated to support this Count, Defendants violated 18 U.S.C. § 2314 (National Stolen Property Act), by willfully transporting, on multiple occasions, natural resources Defendants stole from Plaintiff across state lines by truck, river transportation and railroad, and those resource had a value of more than $5,000.

55.

Based on the facts incorporated to support this count, Defendants violated 18 U.S.C. § 2315 (National Stolen Property Act), by willfully selling, for monetary gain,  natural resources—valued at more than $5,000—Defendants stole from Plaintiff. These sold goods crossed state lines by truck, river transportation and railroad.

56.

Based on the facts incorporated to support this Count, Defendants violated 18 U.S.C. § 2314 (National Stolen Property Act), by willfully transporting natural resources Defendants stole from Plaintiff across state lines by truck, river transportation and railroad.

57.

Defendants' unlawful racketeering practices, as outlined herein, have caused Plaintiff physical, emotional, and financial suffering and thus Defendants are liable to Plaintiff for all amounts decided by the enlightened conscience of a jury.

## COUNT II: STATE CLAIM

### <u>CONVERSION</u>
(*Against all Defendants*)

In Alabama,

"To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse…. The gist of the action is the wrongful exercise of dominion

over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession."

[Ott v. Fox, 362 So. 2d 836, 839 (Ala. 1978)]

58.

Plaintiff hereby re-alleges and incorporates paragraphs 9-57, as if said paragraphs were stated verbatim herein, as support for the allegation made within this Count.

59.

Based on the facts incorporated to support this Count, Defendants have knowingly and unlawfully taken Plaintiff's natural resources and sold or misappropriated these resources for their own economic benefit and without compensating Plaintiff.

60.

Defendants have exercised an illegal assumption of ownership because, in addition to the facts incorporated to support this Count, Defendants knew that a State court order existed, an order that requested appropriate boundaries be set with respect to the remaining land at issue, and had this been done with Plaintiff, the separate issue of Plaintiff's resource ownership (e.g., mineral rights, coal, timber) would have also been addressed. Defendants are playing the ***unscrupulous*** game of wearing down the little man who has limited financial resources in hopes of taking, for free, what should be paid for.

61.

Defendants' unscrupulous conduct, as outlined in this Count, has caused

Plaintiff economic and financial suffering and thus Defendants are liable to

Plaintiff for all amounts decided by the enlightened conscience of a jury.

## COUNT III: STATE CLAIM

### <u>NEGLIGENCE</u>
(*Against all Defendants*)

62.

Plaintiff hereby re-alleges and incorporates paragraphs 9-62, as if said

paragraphs were stated verbatim herein, as support for the allegation made within

this Count.

63.

Based on the incorporated facts to support this Count, Defendants were

negligent because they failed to take reasonably prudent measures of a similar

situated mining/timber company of delineating rights to minerals/natural resources,

to ensure that they did not steal or misappropriate Plaintiff's natural resources.

64.

Based on the incorporated facts to support this Count, Defendants were

negligent because they failed to take reasonably prudent measures of a similar

situated mining/timber company of delineating right to natural resources/minerals, to ensure that they did not commercially mine Plaintiff's coal and other natural resources.

65.

Based on the incorporated facts to support this Count, Defendants were negligent because they failed to take reasonably prudent measures of a similar situated mining/timber company of delineating rights to natural resources/minerals to ensure that they did not take the natural resources.

66.

Defendants' negligence has caused Plaintiff to suffer economic damages of which Plaintiff is entitled to recover under all applicable law.

**COUNT IV**

**VIOLATIONS OF THE SHERMAN ANTI TRUST ACT 15 U.S.C.A. §§ 2, 3**

*(Against Drummond and Twin Pines)*

67.

Plaintiff hereby re-alleges and incorporates paragraphs **9-66,** as if said paragraphs were stated verbatim herein, as support for the allegation made within this Count.

68.

Although Defendant Twin Pines is a separate defendant, Twin Pines and Drummond are working in concert with each other, based on the facts incorporated

into this Count. (See also ECF 10.) With that fact in mind, and in addition to the facts incorporated to support this Count, Defendants Drummond Coal and Twin Pines, as separate legal entities, have conspired with each other in an attempt to monopolize coal commerce within and outside the State of Alabama.  This wrongful conduct has prevented Plaintiff from accessing and exercising dominion over his own coal (and other natural resources), and has significantly hampered Plaintiff's ability to compete against Defendants by trading and selling his coal freely throughout the world.

69.

Based on the incorporated facts and allegations to support this count, along with the facts found in paragraph 68, the object and purpose of Defendants conduct was to destroy all competitive aspirations (real or potential) of Plaintiff in the market place with respect to mining and selling natural resources such as coal.

70.

Based on the incorporated facts to support this Count, and the allegations and facts found in paragraphs 68 and 69, Plaintiff states that Defendants' theft of Plaintiff's resources were anti-competitive acts designed to exclude Plaintiff from the subject market place and thus eliminate competition while attempting to monopolize the Alabama market with respect to coal.

71.

Based on the incorporated facts to support this Count, and the allegations and facts found in paragraphs 68, 69, and 70, Defendants conduct has effectively delayed Plaintiff's entry into the subject market place of resourcing and selling its coal, while also protecting and increasing Defendants' market share within Alabama.

72.

The monopolizing conduct of the Defendants outlined in this Count has caused Plaintiff to suffer damages, including economic damage in excess of fifty eight million dollars. Thus, Plaintiff is entitled to recover damages from these Defendants under all applicable law.

## COUNT V: STATE CLAIM

## CIVIL CONSPIRACY
(*Against all Defendants*)

The Alabama Supreme Court has stat that

> "Civil conspiracy is a combination of two or more persons to accomplish an unlawful end (by civil law standards) or to accomplish a lawful end by unlawful means. By its very nature, the existence of a conspiracy must often be inferred from circumstantial evidence and the relationship of the parties, as opposed to direct evidence. In *O'Dell v. State ex rel. Patterson,* 270 Ala. 236, 117 So.2d 164 (1959), the Court held:
>
> > "A great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the

scheme or undertaking engaged in. The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action."

[Eidson v. Olin Corp., 527 So. 2d 1283, 1285 (Ala. 1988)]

73.

Plaintiff hereby re-alleges and incorporates paragraphs **9-73,** as if said paragraphs were stated verbatim herein, as support for the allegation made within this Count.

74.

Based on the allegations and facts incorporated to support this Count, Defendants Drummond and Twin Pines conspired to accomplish the unlawful end of exercising unlawful dominion over Plaintiff's natural resources.

75.

The named Defendants in this Count have caused Plaintiff to suffer damages, including economic damaged in excess of fifty eight million dollars. Thus Plaintiff is entitled to recover damages from these Defendants under all applicable law.

## COUNT VI: FEDERAL CLAIM

## <u>DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202</u>

76.

Plaintiff hereby re-alleges and incorporates paragraphs 9-75, as if said paragraphs were stated verbatim herein, as support for the allegations made within this Count. Additionally, this Complaint represents a ripe case in controversy that presents federal questions to this Court. See <u>Borden v. Katzman</u>, 881 F.2d 1035, 1037 (11th Cir. 1989) (reasoning that "a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question."); See also <u>Employers Mut. Cas. Co. v. Evans</u>, 76 F. Supp. 2d 1257, 1259 (N.D. Ala. 1999).

77.

Plaintiff desires a judicial determination of Plaintiff's property ownership rights, privileges to minerals and other natural resources at issue in this case.

78.

Plaintiff desires a judicial determination of Plaintiff's rights to the natural resources found below the surface of land areas where Defendants are conducting mining operations, as well as a judicial determination of Plaintiff's timber rights.

## COUNT VII

## <u>VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125</u>
(*Against all Defendants*)

79.

Plaintiff hereby re-alleges and incorporates paragraphs 7-78, as if said paragraphs were stated verbatim herein, as support for the allegations made within this Count.

80.

Defendants have falsely represented (and continue to falsely represent) to one or more third parties, including prospective customers of Plaintiffs that Plaintiffs' coal, coal reserves and/or goods and/or services, and/or timber, timber reserves and/ore goods and/or service regarding monetizing the coal and timber reserves are owned by Defendants. Defendants' untrue statements falsely designated the origin of Plaintiffs' goods and/or services and falsely misrepresented the origination, nature and/or qualities of Plaintiffs' goods and/or services (and continue to do so).

81.

Defendants' false material statements deceived, caused confusion and/or mistake, and/or had the tendency to deceive, cause confusion and/or mistake by prospective customers as to (i) the origination of Plaintiffs' coal, coal reserves and/or goods and/or services, and/or timber, timber reserves and/or goods and/or

services, regarding monetizing the coal/timber reserves and/or (ii) Defendants'

affiliation, connection and/or association with Plaintiffs (and continue to do so).

82.

Defendants made such false statements as regarding: (a) the origination of

Plaintiffs' coal, coal reserves and/or goods and/or services regarding monetizing

the coal reserves, and/or (b) Defendants' affiliation, connection and/or association

with Plaintiff in interstate commerce in connection with one or more attempts to

advertise, promote, sell and/or license Plaintiffs' coal, coal reserves and/or goods

and/or services regarding monetizing the coal reserves.  The same goes for the

timber at issue is this case. Such false statements are material in that they are likely

to influence a customer's purchasing decision.

83.

Defendants engaged (and continue to engage) in reverse passing off, as well

as falsely taking credit for Plaintiffs' coal, coal reserves and/or goods and/or

services regarding monetizing the coal reserves. The same goes for timber at issue

in this case.

84.

Black Diamond is an unregistered but registerable trademark used by

Plaintiff in connection with its coal, coal reserves and/or goods and/or services

regarding monetizing the coal reserves. The same goes for the timber at issue in

27

this case.

85.

Plaintiff has been damaged by Defendants' false statements about Plaintiff's goods and/or services, particularly as they relate to Plaintiff's coal reserves, goods and/or services regarding monetizing the coal reserves. The same goes for the timber at issue in this case.

86.

Defendants' wrongful actions were willful, thereby warranting treble damages.

87.

Plaintiffs will continue to be damaged by Defendants' false statements as to the origination of Plaintiffs' coal, coal reserves, goods and/or services regarding monetizing the coal reserves. The same goes of timber at issue in this case.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully prays that:

1.  This Court will exercise jurisdiction over this case and grant a jury trial;

2.  This Court will decide, as a matter of law, all issues not required to be determined by a jury;

3.  This Court will award all permissible damages recoverable from the Defendants, including general, special, compensatory, punitive, treble,

and any other damages deemed appropriate, in an amount to be

determined at trial;

4.      This Court permit recovery of reasonable attorney's fees and costs in an

amount to be determined by this Honorable Court under applicable law;

and

5.      That this Court grant any additional relief that this Honorable Court

deems appropriate under the circumstances.

Respectfully submitted this 23rd day of September 2015,

Respectfully Submitted,

**s/ Donald V. Watkins**
Donald V. Watkins
Bar Number: ASB-3435-W86D
Attorney for Plaintiff
Donald V. Watkins, P.C.
2170 Highland Avenue S.
Suite 100
Birmingham, AL 35205
Phone: 205-558-4665
Fax: 877-558-4670
Email: dvw@donaldwatkins.com

**s/ DAN MEACHUM**
Daniel Meachum, Esq.
GA Bar No. 500055
Attorney for Plaintiff
Daniel Meachum & Associates
101 Marietta St. NW
Suite 2400
Atlanta, GA 30303
(404) 521-0029 (tel.)
(404) 521-0030 (fax)

**s/ MARIO WILLIAMS**
Mario Williams
GA Bar No. 235254
Williams Oinonen, LLC
The Grant Building, Suite 200
44 Broad Street, NW
Atlanta, Georgia 30303
(404) 654-0288 Telephone
(404) 592-6225 Facsimile

# <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon counsel for the Defendants

a copy of this Second Amended Complaint, via the Court's CM/ECF electronic

filing system:

Jon W. Macklem, Esq.
Greer B. Mallette, Esq.
Attorneys for Molpus Timberlands Management, Inc.
Christian & Small, LLP
505 20th Street North, Suite 1800
Birmingham, Alabama  35203
Phone: (205)795-6588
Fax: (205) 328-7234
Email: jwm@csattorneys.com
gbm@csattorneys.com

John H. Calvin, Esq.
Attorney for Twin Pines Coal, Inc.
4384 Kings Mountain Ridge
Birmingham, Alabama 35242
Phone: (205) 901-6900
Email: jcalvin@jcalvinlaw.com

Philip Piggott, Esq.
Attorney for Drummond Company, Inc.
Starnes Davis Florie, LLP
100 Brookwood Place, 7th Floor
Birmingham, Alabama  35209
Email: ppigott@starneslaw.com

Respectfully submitted this 23rd day of September 2015,

Respectfully Submitted,

**s/ Donald V. Watkins**
Donald V. Watkins

31

## <u>SERVICE ON NEW DEFENDANTS</u>

The newly listed Defendants, SWF Birmingham, LLC, and

Valley Creek Land and Timber, LLC, are being served with a copy of the Second

Amended Complaint in accordance with the Federal Rules of Civil Procedure.

Respectfully submitted this 23rd day of September 2015,


Mario Williams

/s/ Mario Williams
Mario Williams
Counsel for Plaintiff